## Gregg *against* Blackmore.

If one of two tenants in common enter into the exclusive possession of a moiety of the freehold, and continue that possession so long as to acquire a right by the statute of limitations, he cannot afterwards claim his original interest in the residue as a tenant in common.

ERROR to the district court of *Allegheny* county.

This was an action of ejectment by Sidney Gregg, by her committee, Neville B. Craig against Thomas Blackmore and others, for the undivided half part of 35 acres of land in St Clair township.

The case was this: Jane Ormsby (wife of John Ormsby, Sen.) died seised of 60 acres of land, on the bank of the Monongahela river, now between the bridge and the town of Birmingham.   Her husband survived her, and died in December 1805.   She left, also, four children (or their representatives) surviving her, on whom this property descended, subject to their father's life estate by the courtesy. Joseph (one of these heirs) devised his share to plaintiff's son, who soon after died, so that the family of the plaintiff became entitled to one half of the 60 acres.

Soon after the death of the mother the plaintiff and her husband entered into possession of one end of this tract, (which was then in woods,) cleared a portion of it, and erected a ferry-house, the other heirs making no objections.   The father, two or three years afterwards, made a deed of gift to this daughter, first of 25 acres, afterwards of 8 acres, making in all 33 acres, or a little more than one-half in quantity of the whole tract.   Whether from the ignorance of the conveyancer, or the parties, it does not appear; but it so hap-

[Gregg v. Blackmore.]

pened, that the father's deed purports to convey the whole fee, although his interest in the land was only a life estate, the fee simple being in his children.

The plaintiff having thus the release of her father's title to about one-half of the estate, and being entitled to the fee simple of that portion between herself and her children, her husband continued to keep exclusive possession of that end of the tract, to clear, to improve, and build on it, no objection being made by the other heirs. At the death of the father, Oliver Ormsby (her brother) took possession of the balance of the tract. The plaintiff continued to hold the upper end in severalty for forty years, setting up no claim to the possession of the lower part.

It was for her interest in this lower part that this ejectment was brought.

*Grier*, president, instructed the jury that the plaintiff was not entitled *to recover*, and directed them to find a verdict for the defendants.

*Forward* and *M' Candless*, for plaintiff in error.
*Shaler*, for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—The plaintiff, being entitled on the part of her mother to the fourth part of a tract of land which had descended to her in common with a brother, the daughter of a deceased brother, and her own son as devisee of another brother, entered with her husband into a part of it, and shortly afterwards received from her father, who was tenant by the courtesy of the whole, a conveyance of a moiety of it in fee, which was parted from the rest by a boundary fence, to which she and her husband cleared, cultivated, and had actual possession, while her brother exercised acts of ownership over the residue, but did not enclose it; or, having done so, suffered the fences to go down, and the ground to lie waste, or a common. Having acquired an indisputable title to a moiety by the statute of limitations, she ungraciously claims, by her committee, her original interest in the residue as a tenant in common.

Had she and her brother each owned a moiety instead of a fourth, the parting of her purparty by her husband's act, with the brother's assent, and her subsequent ratification of it when discovert, might possibly have constituted a parol partition, executed in part, and therefore binding the rights of both. But her son owned a fourth, while a niece claimed another fourth; and these could not be concluded by a transaction, even had it not been during their infancy, to which they were not privy: consequently, as they were not bound by the partition, neither were the parties to it bound by it. Still was there not such a separation of the occupancy under reciprocal claims of exclusive right to the particular parts, as made the possession of them respectively adverse?

X.—R*

[Gregg v. Blackmore.] ·

The circumstances of the case are unusual; but they exhibit a very distinct abandonment of the original joint possession, and an assumption of separate possession of a moiety respectively by each, with a relinquishment of pretension to any thing else; and that such abandonment is equivalent to an ouster, which, as said by Lord Mansfield in Fishar *v.* Prosser, *Cowp.* 218, may be constituted without actual expulsion, was ruled in Mehaffy *v.* Dobbs, 9 *Watts* 377, and also in Royer *v.* Benlow, 10 *Serg.* & *Rawle* 306, in which Chief Justice Tilghman stated the law to be, that wherever the person who has the right *confesses* himself to be out of possession, the act of limitations runs against him; because there is sufficient evidence of his being ousted, though the land be not enclosed by his adversary; and that he may admit himself to be out of possession, as well by his conduct as by his declarations: for instance, by suffering one in possession of a part to pay the taxes for the whole. This, indeed, was said in respect to actual possession of a part extended by construction to the whole; and in Sorber *v.* Willing, *ante* 141, it was ruled, that a confession of ouster is not to be *implied* from payment of taxes, without such partial occupancy; but surely an *express* confession of it, or, in other words, of seisin or separate possession by another in his own right, is sufficient evidence of the fact to found a title by the statute of limitations, even without partial occupancy, or positive acts of ownership. Having suffered him to repose on such a confession during the period material to the question, and having induced him to forego the actual possession, it would be a fraud on the statute to throw him back on his original title, perhaps when the muniments of it were lost, or his witnesses had passed away. In the case at bar, not only was the brother suffered to pay the taxes assessed on his moiety, but all pretension to the possession of it was disclaimed by acts which admit not of qualification. The plaintiff held by the boundaries designated in her father's conveyance—she had receded from everything else— and why that was framed with an apparent intent to pass a fee, it were needless to inquire. The business is to ascertain the extent of her occupancy under it: and its conformity to those boundaries would have had the same effect, had the grantor been destitute of the pretence of an estate in the premises. But he had a freehold; and his conveyance, though too large for the subject of it, might, were it material, be referred to the estate that was in him. · Erroneously supposing him to have had the fee, she thought herself, and her brother doubtless thought her too, entitled to a moiety in severalty as an advancement by the father; and entering under that belief, it is clear that she left the residue of the tract to her father, and those who were to succeed him. But even if she had entered as a tenant in common, by descent from her mother, the possession of a moiety gained by an invalid partition, acquiesced in by the brother, as it would in time give her an indefeasible title against him by the statute, would be a relinquishment of the possession as to the residue; and she must consequently be held to have occupied according

[Gregg v. Blackmore.]

to what she supposed to be her title. But the necessity of an inquiry as to that, is superseded by the fact that she proclaimed the limits of her occupancy by an actual, visible, and palpable enclosure, beyond which she disclaimed every prerogative of ownership; and if acquiescence in perception of profits by a co-tenant be an acknowledgment of exclusive possession by him, how much more may an amicable division and allotment be so? It is on this principle alone that the statute operates in the case of a boundary mistakingly acquiesced in by the party subsequently concluded by it.

This decision of the question of adverse possession would supersede a decision of the points raised on the doctrine of advancement, did they necessarily spring from the evidence. But there was no pretence of advancement by the mother, and an advancement by the father could not be taken into the account. If the points were relevant, it would be sufficient to say, that we perceive no error in the direction given in respect to them; and the doctrine is, beside, fully considered in an action at the present term, between other branches of the same family.

Judgment affirmed.